UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERWED ANN NOEL,

    Plaintiff,

v.

CARITE OF GARDEN CITY, LANG
AUTOMOTIVE, INC., CARITE, INC.,
CARITE CORPORATE, LLC, KEITH
LANG, and DANNY MCDONALD,

    Defendants.
_____/

Case No. 19-11493
District Judge Victoria A. Roberts
Mag. Stephanie Dawkins Davis

### ORDER GRANTING DEFENDANTS CARITE, INC. AND CARITE CORPORATE, LLC'S MOTION TO DISMISS [ECF No. 9]

**I.    INTRODUCTION**

Sherwed Ann Noel brings this action against CARite of Garden City, Lang Automotive, Inc., CARite, Inc., CARite Corporate, LLC, Keith Lang, and Danny McDonald; Noel says Defendants violated her civil rights by creating and maintaining a racially hostile work environment. She also alleges wrongful termination and retaliation. Noel brings her claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

CARite Inc. and CARite Corporate, LLC (collectively, "CARite") move to dismiss under Federal Rule of Civil Procedure 12(b)(6); CARite says Noel fails to state a claim upon which relief can be granted because she fails to plead facts sufficient to show that CARite was her employer; this is a prerequisite under each of Noel's causes of action.

The Court agrees with CARite and **GRANTS** its motion to dismiss.

1

## II. BACKGROUND

Noel, an African-American female, began working at CARite of Garden City in 2010 as a salesperson. Pursuant to the CARite Dealership Agreement, CARite granted Keith Lang and Lang Automotive, Inc. a license to use its brand name at Lang's dealership. Noel says that she was the only African-American working at CARite of Garden City at the times relevant to her claims.

Noel says that Danny McDonald—one of her co-workers—repeatedly called her a nigger over the course of two years. Noel says that, on several occasions, McDonald called her a nigger in front of Keith Lang, their boss, and Kenneth Barnes, the dealership's general manager. Noel further alleges that although Lang and Barnes were aware of these derogatory remarks and received numerous complaints, they failed to discipline McDonald. Noel says that she made over five complaints to management during 2017 and 2018 until her termination on April 12, 2018.

Noel says that her attorney served Lang with a letter on April 12, 2018; the letter notified Lang of Noel's intent to sue for violations of her civil rights under Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act. Noel says that Lang fired her in response.

Noel timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging gender and race discrimination, as well as retaliation. She received a right to sue letter.

## III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint

2

contain a "short and plain statement of the claim showing that the pleader is entitled to relief," see Rule 8(a)(2), the statement of the claim must be plausible. Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations. *Id.* The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### IV. ANALYSIS

#### A. CARite was not Noel's Employer Under any of her Legal Theories

Noel says that CARite was her employer for purposes of her race discrimination and retaliation claims; she says that "CARite and Lang, joint operators of the Dealership where she was employed, were her employers pursuant to the terms of the Dealership Agreement attached to her First Amended Complaint." [ECF No. 11, PageID.179]. Noel also maintains that "CARite affected and essentially controlled the terms, conditions, or

3

privileges of [her] employment . . . [CARite] established and maintained custody and control over the Dealership bank account. All disbursements from the account were made solely by CARite . . . ." [ECF No. 11, PageID.181].

CARite disagrees and maintains that it did not employ Noel. CARite says that it was not a joint operator of the dealership and exercised no control over employees under the Dealership Agreement effective January 4, 2016; CARite says the 2016 Agreement superseded the agreement that Noel relies on. This 2016 Dealership Agreement is central to the claims contained in Noel's complaint and the Court considers it. *See Bassett*, 528 F.3d at 430.

The Court agrees with CARite—under the terms of the 2016 Dealership Agreement, Lang exercised total control over Noel's employment; Noel fails to state a plausible claim against CARite.

Title VII applies only to "employers." 42 U.S.C. § 2000e-2. The Sixth Circuit instructed that to determine whether a defendant is an employer under Title VII, a court must consider "whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003). In making this determination, the Sixth Circuit looked to whether defendant had the authority to "appoint, hire, fire, and promote eligible employees . . . ." *Id*.

Michigan's Elliott-Larsen Civil Rights Act prohibits, in pertinent part, race discrimination in employment. Mich. Comp. Laws § 37.2202. The "economic reality" test is used to determine whether a plaintiff is an employee under the Elliott-Larsen Act. *See Falls v. Sporting News Pub. Co.*, 834 F.2d 611, 614 (6th Cir. 1987). The "economic

reality" test directs courts to review the "employment situation as a whole in relation to the statutory scheme contemplated by the Michigan act." *Id.* The relevant factors that show an employment relationship include "control of the worker's duties, payment of wages, authority to hire and fire, and responsibility for the maintenance of discipline"; no one factor is controlling. *Id.*

42 U.S.C. § 1981 prohibits, in pertinent part, racial discrimination in the making and enforcement of contracts. *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race.").

Notably, the Sixth Circuit instructed that "[w]e review claims of alleged race discrimination [and retaliation] brought under § 1981 and the Elliott-Larsen Act under the same standards as claims of race discrimination brought under Title VII ...." *Rogers v. Henry Ford Health System*, 897 F.3d 763, 771 (6th Cir. 2018).

In her First Amended Complaint, Noel contends that CARite was her employer because CARite "jointly operate[d] the Dealership with Lang, [and] established and maintained custody over the Dealership bank account"; further, Noel says that CARite was solely responsible for making all disbursements from the account, including disbursements to Lang "for payment of Facility and operating expenses of the CARite Dealership, including but not limited to employment, payroll, benefits and worker's compensation costs, and utilities, lease or other real estate related expenses of the Facility."

However, Noel relies on an outdated version of the Dealership Agreement to make her case. The 2016 Dealership Agreement eliminated the "joint operator" language and

abolished CARite's control of the dealership bank account. CARite maintains that this latest Agreement has been in effect since January 4, 2016—meaning that it was in effect when the alleged discrimination took place in 2017 and 2018.

The 2016 Dealership Agreement gives Lang plenary control over dealership employees; it does not give CARite the authority to make employment decisions. Specifically, the Dealership Agreement provides:

> As the employer of all personnel at the CARite Dealership, Operator [Lang] will: (i) maintain all necessary personnel and payroll records; (ii) calculate employee wages and withhold applicable taxes and other government mandated charges, if any; (iii) remit such taxes and charges to the appropriate taxing authority or government entity; (iv) timely pay net wages and fringe benefits, if any, (e.g., vacation and holiday pay) directly to its personnel; (v) provide for employment liability insurance; and (vi) provide worker's compensation coverage in amounts as required by law . . . The personnel assigned to the CARite Dealership under this Agreement shall at all times remain employees of Operator and shall not be deemed employees or independent contractors of CARite for any purpose.

[ECF No.12, PageID.202].

The 2016 Dealership Agreement removed the "joint operator" language that Noel relies on; it makes no mention of CARite maintaining custody over the dealership bank account, instead mandating that Lang pay employees. The Agreement also stipulates that CARite will provide training to employees at Lang's request.

Given the 2016 Agreement's plain language—and Noel's conclusory allegations—Noel fails to plead facts sufficient to state a plausible claim that CARite was her employer under any of her legal theories.

Noel's ELCRA, Title VII, and 42 U.S.C. § 1981 claims are dismissed.

## B. Noel's Failure to Identify CARite in her EEOC Charge is Irrelevant

The parties also address Noel's failure to identify CARite as a defendant in her EEOC charge; CARite says that Noel's failure to identify it necessitates dismissal of her Title VII claim.

The Court declines to address the parties' arguments. Because Noel cannot show that CARite was her employer, her Title VII claim must be dismissed; Title VII only applies to employers. *See* 42 U.S.C. § 2000e-2.

## V. CONCLUSION

Noel fails to state a claim under all her legal theories. Given her conclusory factual allegations—which rely on an outdated and inapplicable Dealership Agreement—she cannot demonstrate that CARite was her employer.

CARite's motion is **GRANTED**; Noel's claims against CARite are **DISMISSED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: July 16, 2019